**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHANNON L.,[1]                                              Case No. 3:25-cv-0082

           Plaintiff,
                                     Bowman, M.J.

    v.


COMMISSIONER OF SOCIAL SECURITY,

           Defendant.


### MEMORANDUM OPINION AND ORDER[2]

Plaintiff Shannon L. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, the Court AFFIRMS the ALJ's decision because it is supported by substantial evidence in the record.

### I. Summary of Administrative Record

On October 31, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. On the same date, Plaintiff also filed a Title XVI application for supplemental security income. In both applications Plaintiff alleged disability beginning on December 1, 2019. Plaintiff's claims were denied initially and on reconsideration.

---

[1]Because of significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

[2]The parties have consented to disposition by the undersigned magistrate judge. *See* 28 U.S.C. § 636(c).

On October 26, 2023, Plaintiff appeared with counsel and testified at a telephonic hearing before Administrative Law Judge ("ALJ") Janice Bruning. A vocational expert also testified. On February 7, 2024, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff was born in 1989 and was 30 years old on December 1, 2019, the alleged disability onset date. (Tr. 29). She has at least a high school education, attended some college (Tr. 23, 29), and although she was employed after the alleged disability date, Plaintiff had not engaged in substantial gainful activity after December 1, 2019.

Based on the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbar spine disorder; intentional hand tremors." (Tr. 20). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 21). The ALJ determined that, despite these impairments, Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work subject to the following exceptions:

> never climb ladders, ropes, or scaffolds and no more than occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; be provided a sit-stand option allowing her to stand for one to two minutes after sitting for thirty minutes; use the upper extremities no more than frequently to reach, handle, finger, and feel; avoid concentrated exposure to vibration and work hazards such as unprotected heights and dangerous moving machinery and avoid all exposure to noise at jackhammer level or louder.

(Tr. 22-23). Based on the RFC and testimony from the VE, the ALJ agreed that Plaintiff could not perform any past relevant work. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform other jobs that exist in

significant numbers in the national economy, including the representative occupations of account clerk, telephone clerk, and order clerk. (Tr. 29-30). The ALJ concluded that Plaintiff was not disabled from December 1, 2019 through the date of the decision. (Tr. 30).

In this case, Plaintiff contends that the ALJ erred in evaluating her physical RFC, failed to properly evaluate the persuasiveness of medical opinion evidence, and did not provide a full and fair hearing. (*See* Doc. 10).

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also

exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an

4

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B.  The ALJ's RFC Finding is Supported by Substantial Evidence**

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ failed to adequately explain her sit/stand limitation. (Doc. 10 at PageID 2335). As noted above, the ALJ determined that Plaintiff could perform sedentary work, provided "a sit-stand option allowing her to stand for one to two minutes after sitting for thirty minutes." (Tr. 22).

The undersigned finds no error in the ALJ's decision. A claimant's RFC is an assessment of "the most a [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). An RFC assessment must be based on all the relevant evidence in the case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)– (5).

In rendering the RFC determination, the ALJ need not discuss every piece of evidence considered. *See Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004)). However, the ALJ still has an obligation to consider all of the evidence before her and to meaningfully explain how the evidence supports each conclusion and limitation included in the RFC. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017) (Newman, M.J.), *report and recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017) (Rice, D.J.); Soc. Sec. R. 96-8p, 1996 WL 374184, *7 ("The RFC

assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence ...").

The Sixth Circuit has found that the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge is required to base her determination on a physician's opinion). As such, no bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

Thus, the role of the ALJ is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Under 20 C.F.R. § 404.1520c, an ALJ must evaluate the "persuasiveness" of each medical opinion, which requires the ALJ to explain how she considered the supportability and consistency of the opinion. Notably, the role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

In formulating Plaintiff's RFC in this case, the ALJ recognized Plaintiff's back impairments, reviewed the relevant medical evidence, and discussed the medical opinion evidence in the record. Specifically, the ALJ considered Plaintiff's lumbar spine disorder and chronic low back pain, noting that she suffered a L3-L4 compression fracture and had a subsequent vertebroplasty as a result of a car accident. (Tr. 23). With respect to

treatment, the ALJ recognized that medication, physical therapy, and chiropractic treatments resulted in improvement in her pain. (Tr. 23). The ALJ further discussed spinal imaging from 2014, 2021, and 2023, with the April 2023 MRI showing "remote mild anterior compression deformity of L3 with suspected vertebroplasty changes within the L3 and L4 vertebrae; multilevel degenerative changes . . . and mild spinal canal stenosis and lateral recess stenosis." (Tr. 23-24). Plaintiff had lumbar fusion surgery on May 10, 2023.

The ALJ also reviewed prior administrative medical findings and opinions with respect to Plaintiff's back impairments. First, the ALJ reviewed the opinion of the Disability Determination Service (DDS), which found a light RFC, including standing/walking and sitting for six hours in an eight hour workday. (Tr. 25). The ALJ found the opinion not fully persuasive on account of additional evidence not being available to the DDS. Specifically, the ALJ noted Plaintiff's hearing testimony suggesting greater limitations. On this basis, the ALJ limited her to a lighter carrying limitation and, with respect to her standing and sitting requirements, less total standing time (two hours in an eight hour workday) and a sit-stand option to break up prolonged sitting periods.

The ALJ also reviewed the opinions of Amy Goff Yates, CNP and Jennifer Smail, M.D.. Smail's opinion, which the ALJ found of some persuasive value, was that in August 2023 Plaintiff could return to light duty immediately with restrictions, including being provided sitting breaks as needed. (Tr. 26).

Yates opined that Plaintiff "cannot walk a city block without rest or severe pain" and can sit and stand for 20 and 15 minutes at one time, respectively. (Tr. 27). Yates further opined that Plaintiff could not sit or stand for more than two hours in a workday and that she needs periods of walking every fifteen minutes for ten minutes, as well as a

job that permits shifting positions from sitting, standing or walking. The ALJ did not find this opinion persuasive, on account of Yates not referencing specific treatment notes in support of the opinion or explaining how Plaintiff was able to perform light work after the alleged onset date. (Tr. 27). The ALJ further noted that the opinion was inconsistent with Plaintiff's testimony, specifically her claim that she can stand for three hours without limitation and walk ten minutes before stopping.

Based on an assessment of the entire record, the ALJ reasonably determined that Plaintiff could perform sedentary work with exceptions, including accommodating Plaintiff's limitations, in part, with a sit-stand option. Although the sit-stand option allowing Plaintiff to stand for one to two minutes after sitting for thirty minutes does not correspond to a particular physician's opinion—it falls between the DDS's findings and Yates' opinion with respect to Plaintiff's sitting capabilities[3]—it is not required to. *See Rudd*, 531 F. App'x at 728. *See also Ferguson v. Comm'r of Soc. Sec.,* No. 2:18-cv-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019) ("Nor, as the case law above makes clear, was the ALJ required to explain why he did not adopt their opinions in full"), Report and Recommendation adopted at 2019 WL 3083112 (S.D. Ohio July 15, 2019); 20 CFR § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion (s) or prior medical finding(s)"). In finding a sit-stand option appropriate, the ALJ accommodated the opinions of Yates and Smail who both recommended that Plaintiff requires sitting breaks and/or the ability to shift positions from sitting and standing. (*See* Tr. 26, 27). The ALJ also reasonably adjusted the duration

---

[3] As noted above, the DDS found that Plaintiff could sit for six hours in a workday with no limitation on the duration, while Yates opined that she could sit for 20 minutes at a time.

that Plaintiff would be required to sit—again, the DDS opinion included no such limitation—based on Plaintiff's testimony suggesting that such a limitation was warranted. And although Plaintiff testified that she could not sit for more than ten minutes at a time, upon consideration of the full record and hearing testimony, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23).

As argued by Defendant, Plaintiff essentially asks this Court to reweigh the evidence and find that a greater limitation is warranted. However, it is the sole responsibility of the ALJ to evaluate the evidence in the record and determine the RFC. *See* 20 C.F.R. § 416.946; *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). It is not the province of this Court to reweigh the opinion evidence. *See Whetsel v. Comm'r of Soc. Sec.*, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("it is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion."); *Dyson v. Comm'r of Soc. Sec.*, 786 Fed. Appx. 586, 588 (6th Cir. 2019) ("[t]his [C]ourt does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job.").

Because the ALJ's RFC formulation is supported by substantial evidence and otherwise consistent with the applicable regulations, this Court must defer to her decision.

**C. The ALJ Properly Evaluated the Medical Opinion Evidence.**

In her second asserted error, Plaintiff argues that the ALJ failed to properly evaluate the persuasiveness of Plaintiff's primary care nurse practitioner, Amy Goff Yates, CNP. Specifically, Plaintiff claims that the ALJ failed to evaluate the consistency of her

opinion by comparing the opinion to the remaining evidence in the record. (Doc. 10 at PageID 2339).

Under 20 C.F.R. § 404.1520c, an ALJ must evaluate the "persuasiveness" of each medical opinion by considering multiple factors, including "supportability" and "consistency." 20 C.F.R.. §404.1520c(c). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. § 416.920c(c)(2).

The undersigned finds no error in the ALJ's analysis. As discussed above, in evaluating Yates' opinion, the ALJ found that Yates failed to support the opinion with specific treatment notes.[4] With respect to the consistency factor, the ALJ found that Yates' opinion was inconsistent with Plaintiff's testimony. *See Hopkins v. v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *4 (6th Cir. Apr. 9, 2024) ("The regulation provides that the evaluation of the consistency factor involves comparing the opinion to medical and nonmedical sources, including the claimant herself."). Yates opined that Plaintiff could not walk a block without rest or severe pain and that she could not stand or walk for more than two hours in an eight hour work day. This opinion, the ALJ observed, was

---

[4] Specifically, the ALJ determined that the opinion "does not make any references to specific treatment notes in regards to the need for unscheduled breaks, limited use of her upper extremities or hands, or what a good versus bad day means." (Tr. 27). With respect to Yates' opinion regarding Plaintiff's concentration capabilities or required absences, the ALJ further noted that "[h]er treatment notes do not show concern about absences nor for her attention or concentration capacity." (*Id.*).

inconsistent with Plaintiff's testimony that she could stand for three hours without limitation and walk for ten minutes without stopping. The ALJ further noted the opinion was inconsistent with Plaintiff's ability to perform work at the light level since the alleged onset date. (*See* Tr. 27).

Although, the ALJ did not explicitly use the terms supportability and consistency, an ALJ need not use the precise words so long as he or she has explained how those two "most important" factors were considered in determining the persuasiveness of each opinion. 20 C.F.R. § 404.1520c(b)(2); *see also Hardy v. Comm'r of Soc. Sec.*, No. 2:20-cv-4097-CMV-JLG, 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021) (use of words "supportability" and "consistency" not required where opinion adequately addressed both issues); *Howard H. v. Comm'r of Soc. Sec.*, 2:20-cv-4932-ALM-CMV, 2022 WL 765217, at *4 (S.D. Ohio March 14, 2022) (finding no error where the ALJ did not use the term "consistency" but discussed other evidence received at the hearing). Because the ALJ properly considered the medical opinion evidence and the decision is otherwise supported by substantial evidence, the Court finds no reversible error.

### D. The ALJ did not Deprive Plaintiff of a Full and Fair Hearing

Finally, Plaintiff claims that the ALJ failed to provide her with a full and fair hearing. According to Plaintiff, the ALJ impermissibly precluded her attorney from asking her questions during the hearing. (*See* Doc. 10 at PageID 2341-44). Specifically, Plaintiff claims that she was precluded from offering testimony regarding the impact of her May 2023 lumbar fusion surgery and headaches.

Plaintiff's claimed error is without merit, as the record in this case does not suggest that Plaintiff was precluded from being questioned by counsel. To the contrary, the record reflects that Plaintiff's counsel had the opportunity to question Plaintiff but declined to do

11

so. After the ALJ asked questions of Plaintiff and the vocational expert, she provided Plaintiff's attorney with the opportunity to ask questions: "Counsel, any questions *for your client* or for the vocational expert?" (Tr. 61 (emphasis added)). Plaintiff's counsel then asked several questions of the vocational expert before stating that he had no further questions. (Tr. 62 ("Thank you. I have no further questions, Your Honor.")).

Although Plaintiff claims the call was abruptly ended without the opportunity for Plaintiff's counsel to question her, this is not reflected in the record.[5] In this regard, Plaintiff's case is distinguishable from *Scott v. Comm'r of Soc. Sec.*, 1:23-cv-1765, 2024 WL3678788, at *17-18 (N.D. Ohio July 17, 2024), the case cited by Plaintiff in support of her claim. In *Scott*, the Court found a due process error after the ALJ denied counsel's requests to conduct further questioning or schedule a supplemental hearing, distinguishing the case from the situation—like here—where counsel did not object or request a supplemental hearing. *See id.* at *19 (distinguishing *Pate v. Astrue*, No. H-08-249, 2009 WL 4825206, at *9 (S.D. Tex. Dec. 8, 2009)). Moreover, as argued by Defendant, the ALJ considered Plaintiff's headaches and the relevant evidence and medical opinions in reaching her decision, finding the headaches were not a severe impairment but accommodating the condition with a noise limitation.[6] (Tr.  21, 26). The

---

[5] After Plaintiff's counsel indicated they had no further questions, the ALJ brought the hearing to a close as follows: "At this time, ma'am, I'm ready to end your hearing. I appreciate you participating and I see, counsel, 30 days to get in the Astoria work records. Everyone, the hearing is over. We're all going to hang up now and have a good day. Thank you very much. Bye. Bye." (Tr. 62). The record is devoid of any indication that counsel was unable to clarify that he wished to question Plaintiff or that the ALJ would have denied the opportunity.

[6] With respect to Plaintiff's headaches the ALJ noted: "The claimant has headaches (Exhibit 3F; 6F/10; 13F/5). She treats her headaches with medication (Exhibit 3F) but is off medication at times (Exhibit 3F/10). She stated that she had two mild headaches per month (Exhibit 6F/7) which has improved to one mild headache per month (Exhibit 11F/9). At the hearing, the claimant testified that she takes shots once a month for headaches. There was no evidence of headache disorder as seen in SSR 19-4p nor imposing any functional limitation(s) lasting or expected to last at least twelve continuous months but given

12

ALJ also considered the entire record in reaching her decision, including evidence of Plaintiff's symptoms and impairments following her May 2023 surgery.

Upon review of the record in this case, the undersigned concludes that the ALJ did not preclude Plaintiff's counsel from asking Plaintiff questions or otherwise deprive her of a full and fair hearing.

### III. Conclusion and Recommendation

Because the Commissioner's decision reflects no reversible error and is supported by substantial evidence, the decision is **AFFIRMED.  IT IS FURHTER ORDERED** that this case is **CLOSED**.

 s/Stephanie K. Bowman
Stephanie K. Bowman
United States Chief Magistrate Judge

---

consideration to avoid exposure to noise at the jackhammer level or louder and this could aggravate headaches."

13